UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| VICTOR FIELDS,<br><br>        Petitioner,<br><br>v.<br><br>JOAN FABIAN, Commissioner of Corrections,<br><br>        Respondent. | Civil No. 07-3995 (JNE/FLN)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent has filed an opposition to the Petition, contending that it should be dismissed on the merits. The case has been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition for a Writ of Habeas Corpus be dismissed with prejudice.

**I.    BACKGROUND**

On February 7, 2002, Petitioner was indicted by a Hennepin County Grand Jury on six counts: First degree and Second Degree Murder; First and Second Degree Attempted Murder and First and Second Degree Assault. On October 4, 2002, a jury returned verdicts of guilty on all six counts against Petitioner. On October 25, 2002, Petitioner was sentenced to life imprisonment for First Degree Murder, 240 months for Attempted First-Degree Murder and execution of an 84 month stayed sentence on a prior burglary conviction, consecutively.

On January 22, 2003, Petitioner filed a Notice of Appeal to the Minnesota Supreme

court. On May 20, 2004, the Supreme Court affirmed Petitioner's conviction, but modified his sentence for Attempted First Degree Murder from 240 to 220 months. On July 29, 2004, Petitioner filed a Motion for Correction of Sentence. On November 15, 2004, Petitioner filed a Petition for Post-conviction relief. On July 17, 2006, the Motion for Correction of Sentence was granted, reducing Petitioner's sentence for Attempted First-Degree Murder from 220 months to the presumptive sentence of 180 months. The judge denied Petitioner's Petition for Post-Conviction Relief in its entirety. On September 19, 2006, Petitioner filed a Notice of Appeal to the Minnesota Supreme Court. On June 21, 2007, the Minnesota Supreme Court filed an opinion affirming the denial of post-conviction relief. On September 17, 2007, Petitioner filed this Petition for Writ of Habeas Corpus.

## II.     STANDARD OF REVIEW

In 1996, Congress restricted the scope of a federal court's review of habeas petitions where the underlying claims were adjudicated in state court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A federal court's authority to nullify state court decisions by the granting of a writ of habeas corpus, is now limited to the class of claims which have been fully exhausted in the state courts, and which involve an adjudication that either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a federal court may grant habeas relief to claims adjudicated in the state courts. See, Williams v. Taylor, 529 U.S. 362 (2000). The Court further explained that consideration of a state court's decision, under the "unreasonable application" clause, requires a federal court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000); see also, Davis v. Norris, 423 F.3d 868, 874-75 (8th Cir.2005); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir.2003).

Under this heightened standard of review, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also, Davis v. Norris, 423 F.3d 868, 875 (8th Cir.2005); Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir.2001)(examining the impact of Williams on habeas proceedings); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir.2001); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir.2000).

Williams affirmed the distinction that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. Williams v. Taylor, 529 U.S. 362 (2000). When a petitioner argues that the state court improperly applied clearly established federal law to a particular set of facts, the federal courts may not grant

3

a writ absent a finding that such an application was unreasonable.

The Court must presume the correctness of all purely factual determinations which are made by the state absent clear and convincing evidence to the contrary. 28 U.S.C. §2254(e)(1); Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir.2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir.2005). However, a writ may be issued if the state decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir.2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir.1996).

A federal district court is not allowed to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams .

A state prisoner must normally exhaust all available state judicial remedies before a federal court will entertain a petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The state courts must have the first opportunity to hear the claim and "pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971). Exhaustion of state remedies is governed by whether the petitioner has presented a fair opportunity to the state court to rule on the claims presented in the federal petition. See Picard v. Connor, 404 U.S. 270, 276-77 (1971). A federal claim is fairly presented to the state courts if "the applicant for a writ of habeas corpus refer[s] to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent

federal constitutional issue' in a claim before the state courts." Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir.1988) (*quoting* Martin v. Solem, 801 F.2d 324, 330 (8th Cir.1986)). The exhaustion requirement is not satisfied unless the habeas petitioner has raised all of his claims at every available level of the state court appeal process. O'Sullivan, 526 U.S. at 845; Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir.1993) ("A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim.")

### III.   ANALYSIS OF PETITIONER'S CLAIMS

With the foregoing standards in mind, the Court turns to the four grounds of relief listed in Petitioner's current habeas corpus petition. Petitioner argues that (1) he was denied the right to confront his accuser; (2) his sentence was invalid; (3) the prosecutor engaged in unlawful misconduct depriving him of a fair trial; and (4) the evidence was insufficient to support his indictment. The Court will address each of the Petitioner's contentions in turn.

1. Petitioner's assertion that he was denied the right to confront his accuser.

In the first claim to be considered, Petitioner asserts that he was denied the right to confront his accuser when the prosecution admitted into evidence statements of a witness who was unavailable for cross-examination during the trial.

The facts show that one month before trial, eyewitness Dennis Johnson received a call from Petitioner from the jail where Petitioner was incarcerated. Petitioner called himself "little Mike", but Johnson recognized his voice as being the Petitioner. Two Hennepin County employees also recognized Petitioner's voice on the phone call. On the phone call, Petitioner told Johnson that his trial was coming up and that Johnson should not testify

against him. He also asked Johnson why he didn't hang around with Petitioner's family any more. Johnson testified that he viewed the call as an indirect threat for him not to testify at the trial. As a result, Johnson did not respond to the State's subpoena and had to be taken into custody. Only after the trial court informed Johnson about his obligations and the court's contempt powers did Johnson reluctantly agree to testify at Petitioner's trial.

During Johnson's testimony at trial, two of Petitioner's relatives walked in, sat down in the front row and maintained eye contact with Johnson. Johnson asked for a recess and thereafter refused to testify because he was afraid for his safety. He was also concerned about the safety of his grandmother.

The prosecution moved the court to admit Johnson's prior statements to the police and his grand jury testimony based on Minnesota Rules of Evidence Rule 804(b)(5). Minnesota Rules of Evidence Rule 804 is an exception to the hearsay rule when a declarant is unavailable to testify at trial. It allows admission of an out-of-court statement when it is trustworthy and demonstrates trustworthiness. Idaho v. Wright, 497 U.S. 805, 807 (1990). In this present circumstance, the parties agree that Johnson was unavailable for purposes of the hearsay rule. The prosecution proved to the satisfaction of the district court that Johnson's statements were trustworthy. After making the findings required by the Minnesota Rules of Evidence, the trial court admitted the prior statements made by Johnson and his previous testimony before a grand jury. The trial court also found that Petitioner had waived his constitutional right to cross-examine Johnson.

Neither Johnson's statements nor his grand jury testimony were subject to cross-examination. Petitioner contends that the trial court's decision to admit Johnson's statement and grand jury testimony violated Petitioner's constitutional right to confrontation.

The Sixth Amendment provides that in all criminal prosecutions, the accused "shall enjoy the right . . . to be confronted with the witnesses against him. . ." U.S. Const. Amend. VI. Under normal circumstances, testimonial statements are inadmissible under the Confrontation Clause unless the prosecution either produces the declarant for cross-examination or demonstrates both that the declarant is unavailable and that the statement bears adequate indicia of reliability. Idaho v. Wright, 497 US 805, 814 (1990). Testimonial statements (which Johnson's prior statements and grand jury testimony clearly are) require a prior opportunity for cross-examination. Crawford v. Washington, 541 US 36, 68-69 (2004).

However, if a witness is unavailable because of the defendant's own wrongful conduct, he forfeits his Sixth Amendment right of confrontation, because, "he is in no condition to assert that his constitutional rights have been violated." Reynolds v. United States, 98 US 145, 158 (1878). Crawford recognized that this rule of forfeiture is still valid and extinguishes confrontation claims. Crawford v. Washington, 541 US 36, 62 (2004).

In Davis v. Washington, the United States Supreme Court again addressed the rule of forfeiture by wrongdoing:

> But when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in Crawford: that "the rule of forfeiture by wrongdoing ... extinguishes confrontation claims on essentially equitable grounds." 541 U.S., at 62, 124 S.Ct. 1354 (*citing* Reynolds, 98 U.S., at 158-159). That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

Davis v. Washington, 547 US 813, 833 (2006).

7

In this present case, the district court found that Petitioner forfeited his constitutional right to cross-examination. The district court found that Petitioner engaged in wrongful conduct when he successfully procured the unavailability of Johnson. The Minnesota Supreme Court affirmed the district court decisions and also found that the admission of Johnson's statements to the police and his grand jury testimony was not an abuse of discretion and it did not violate the Sixth Amendment. State v. Fields, 679 N.W.2d 341, 346-47 (Minn. 2004).

Evidentiary rulings are in the district court's discretion and ordinarily will not be reversed unless there is a clear abuse of discretion. State v. Litzau, 650 N.W.2d 177, 182 (Minn. 2002)(*citing* State v. Bjork, 610 N.W.2d 632, 636 (Minn. 2000). However, if Petitioner can establish, by clear and convincing evidence, that the trial court's factual findings were wrong,[1] the admission of Johnson's uncross-examined statements and grand jury testimony would constitute a Sixth Amendment confrontation clause violation which would entitle Petitioner to federal habeas corpus relief.   Davis v. Washington, 547 US 833-34, (2006).

Here, the trial court found that Petitioner was attempting to intimidate the witness by implying that something was going to happen to him or his family if he testified.

> "I think there is *abundant evidence* that [Petitioner] was *in a concerted pattern to intimidate witnesses, to keep witnesses from testifying*, that witnesses knew, . . . he had their phone number, he knew where they lived essentially, he knew details about their case, . . . by pretending to be somebody else from the jail, even though people figured out that it was him, he was, I think, trying to create an inference that a lot of people knew and were talking about, . . . why are you cooperating with them or why are you trying to hurt, . . . a good person, . . . implying in that is something is going to happen."

---

[1] See 28 U.S.C. Section 2254(e)(1)

See Respondent's Memorandum [Docket Entry # 16] at p. 7.  The Court went on to describe what happened shortly after Johnson began his trial testimony:

> "I think it would be fair to characterize it as, rather dramatically sat down in the front row and had locked-on stern eye contact with [Johnson] – at least, that's what I was seeing in the courtroom. . . . [Johnson] was clearly intimidated and scared by that behavior in terms of family members of the [Petitioner]."

See Respondent's Memorandum [#16] at p. 5.

The Petitioner has failed to present any clear and convincing evidence that the trial court's factual findings were wrong.  As the trial court found that Petitioner's own conduct prevented Johnson from testifying at trial, the Petitioner forfeited his right to confront the witness on cross-examination.  The state district court and the Minnesota Supreme Court correctly analyzed the law.  Petitioner is not entitled to any relief on this claim.

    2.    <u>Petitioner's claim that the verdicts were invalid</u>.

Petitioner claims that his sentence is invalid because the evidence was insufficient to support the convictions.[2]

First, Petitioner states that some of the prosecution's key witnesses were

---

[2] In his original petition for habeas relief, Petitioner claimed that his verdicts were invalid because the jury returned verdicts on both first and second degree murder. Petitioner's argument is based on the fact that a defendant may not be convicted of a crime and a lesser-included crime. The Double Jeopardy Clause would forbid cumulative punishment for a greater and a lesser-included offense. <u>Brown v. Ohio</u>, 432 U.S. 161, 168-69 (1977). However, this is not the case in this matter. The Petitioner was not convicted on both of these crimes. While he was found guilty by the jury of multiple counts, he was only convicted of first degree murder, and attempted first degree murder, the higher count for each of his two victims. See, Minn. Stat.§ 609.04. Therefore, the verdicts in this case were valid and the Petitioner's assertions are without merit. However, in his habeas reply brief, Petitioner brings up further reasons for his claims of invalidity, which are addressed above in the text of this Report and Recommendation.

unbelievable. Petitioner mentions specifically that the prosecution's jailhouse informants were not believable and were lying to the prosecution. Second, Petitioner claims that the prosecution never proved premeditation. To show that there was intent to commit murder on the part of the Petitioner, the state relied upon evidence of a surveillance video showing that Petitioner left his apartment at or around the time that he received a phone call. Petitioner claims that this evidence is not enough to prove premeditation, thus he should not have been convicted of First-Degree Murder.

As to the first point, credibility of witnesses is a matter exclusively committed to the jury. United States v. Grover, 511 F.3d 779, 782 (8th Cir. 2007); United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005). By its verdict it appears the jury here believed the government's informants. That Petitioner doesn't think they should have does not render the evidence insufficient.

As to the second point, premeditation "does not require proof of extensive planning or preparation to kill, nor does it require any specific period of time for deliberation." State v. Cooper, 561 N.W.2d 175, 180 (Minn. 1997). A reasonable jury could infer from the evidence that Petitioner acted with the degree of pre-meditation required to support his conviction.

The evidence showed that a call was placed to Petitioner's telephone shortly before the victim was shot and killed at a bus stop near Petitioner's home. Surveillance video showed Petitioner running toward the scene of the shooting, shortly after the call was received. After confirming the identity of his intended victim, Petitioner fired his gun not less than eight times at the victim. The foregoing evidence is sufficient to sustain the Petitioner's conviction for first degree murder.

     3.     <u>The Petitioner's claim that the prosecutor engaged in misconduct.</u>

In his third claim, Petitioner argues that the prosecutor engaged in misconduct when he made reference in his closing argument to alleged statements made by an uncalled witness, suggesting that the murder was planned.

When prosecutorial misconduct is alleged, federal intervention is warranted only if (1) the conduct was improper, and (2) the conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair proceeding. <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986); <u>United States v. Stands</u>, 105 F.3d 1565, 1577 (8th Cir. 1997); <u>United States v. Hernandez</u>, 779 F.2d 456, 458 (8th Cir. 1985). To warrant habeas corpus relief, the conduct by the prosecutor must have been so unfair as to make the resulting conviction a denial of due process. <u>Donnelly v.DeChristoforo</u>, 416 U.S. 637 (1974). To constitute a denial of due process, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987). To determine whether the conduct deprived the petitioner of a fair trial, the conduct must be viewed in the context of the entire trial. <u>United States v. Young</u>, 470 U.S. 1, 11 (1985). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.' " <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (*quoting* <u>Donnelly</u>, 416 U.S. at 642.)

In rejecting Petitioner's contention that his trial counsel was ineffective in failing to object to the prosecutor's closing argument, the Minnesota Supreme Court said:

> "During the prosecutor's closing argument, the prosecutor stated:
>
>> 'And then JR walks away, towards the store. Minutes later JR borrows Jamal Mays' phone, his cell phone, pays him a few-50 cents, I believe it was, or 75 cents to use that phone because the pay phone at the store was out of order. That call was placed to the defendant's apartment. The defendant then comes running out of that apartment, through the commons, towards the opening of the fence by Zane Avenue, towards the bus.
>>
>> * * * *
>>
>> And importantly, the timing of the phone call. 18-second phone call, this isn't a phone call where somebody's calling up just to chat away. It's 18 seconds, just enough time to get the message from JR to his cousin, the defendant, that, hey, the guy's out here.'
>
> Fields asserts that this was misconduct because JR never testified, no one testified that "JR called [Fields] saying 'the guy[']s out here,' " and there was no testimony that Fields was in his apartment to receive the call.
>
> Based on the record, it does not appear that trial counsel's failure to object to the prosecutor's statements fell below an objective standard of reasonableness. While JR did not testify, there was ample evidence in the record supporting the prosecutor's argument, including testimony that Fields' cousin JR used a cell phone and placed a call to the number listed for Fields' apartment, and surveillance tapes showing Fields running towards the scene of the crime shortly after that call was placed. Because the prosecutor's arguments were based on reasonable inferences that could be drawn from that evidence, we conclude that the prosecutor's closing argument did not amount to misconduct. See State v. Barnes, 713 N.W.2d 325, 336 (Minn.2006) (explaining that the "state's closing argument can include reasonable inferences from the evidence" and that doing so does not amount to prosecutorial misconduct).
>
> Fields v. State, 733 N.W.2d 465, 470 (Minn. 2007).

This Court agrees that the argument made by the prosecutor was not improper. The remarks were reasonable inferences that could be drawn from the evidence. There was evidence of a call from a cell phone which was placed to Petitioner's apartment at

12

the time of the crime. There was surveillance tape showing Petitioner leaving his apartment building and running towards the scene of the crime shortly after the call was placed. This evidence supports the statements made by the prosecutor in his closing arguments. As these were reasonable inferences that could be drawn from the evidence, the prosecutor's statements do not amount to misconduct. See, State v. Barnes, 713 N.W.2d 325, 336 (Minn. 2006)(stating that the state's closing argument can include reasonable inferences from the evidence).

    4.    <u>Petitioner's assertion that the evidence was not sufficient for indictment.</u>

In his final claim, Petitioner argues that there was insufficient evidence presented to the grand jury to support an indictment. Petitioner concedes that this issue was not exhausted in the state courts. See, Petition, p. 5. As Petitioner would be unable to prevail on this claim even if he had exhausted his state court remedies, the Court concludes that it should address the merits of Petitioner's claim. See 28 U.S.C. § 2254(b)(2), ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.")

"It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." United States v. Nelson, 165 F.3d 1180, 1182 (8th Cir. 1999). In United States v. Mechanik, 475 U.S. 66, 72-73 (1986), the Court held that conviction by a petit jury renders harmless errors that occurred before the grand jury. In that case, the Supreme Court found that the presence of unauthorized persons in the grand jury violated Fed.R.Crim.P. 6(e), but that the petit jury's conviction rendered the error harmless. The

Court held that the presence of unauthorized persons before the grand jury did not justify relief after the petit jury had returned its verdict. Id. at 70.  As the jury's guilty verdict establishes the Petitioner's guilt beyond a reasonable doubt, it necessarily establishes that there was probable cause to believe he committed the crimes with which he was charged. That fact makes any error in the grand jury proceeding (including any contention that insufficient evidence was presented to the grand jury) harmless beyond a reasonable doubt.

The same reasoning applies here. The jury's eventual conviction of Petitioner renders harmless his claims that the indictment was not supported by sufficient evidence during the grand jury proceeding.  Petitioner's claim that his conviction was unlawfully obtained because of errors in the grand jury proceeding should be denied.

## IV.  CONCLUSION

For the reasons discussed above, Petitioner's claims do not warrant habeas relief under the standards prescribed in 28 U.S.C. § 2254(d) and Williams v. Taylor, 529 U.S. 362 (2000).  This action must be dismissed.

## V.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus (Docket No. 1) be DISMISSED WITH PREJUDICE.

Dated: June 11, 2008

*s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 30, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.